IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

USDC- GREENBELT
'23 MAY 15 PM1:08

|  |  |
|---|---|
| RONALD DOUGLAS TURNER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 1:22-cv-0787-LKG |
| v. ) | |
| ) | Dated: May 15, 2023 |
| RICHARD S. RODERICK,[1] ) | |
| CORRECTIONAL OFFICER G. PORTER, ) | |
| COMMISSIONER O. WAYNE HILL, ) | |
| SECRETARY ROBERT L. GREEN, ) | |
| EXEC. DIRECTOR F. TODD TAYLOR, ) | |
| GOVERNOR LAWRENCE J. HOGAN, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**

Self-represented plaintiff Ronald Douglas Turner, a state inmate currently confined at

North Branch Correctional Institution ("NBCI"), filed this civil rights complaint pursuant to 42

U.S.C. § 1983, the Americans Disabilities Act ("ADA"), and the Rehabilitation Act ("RA")

against Correctional Officer G. Porter, Commissioner O. Wayne Hill, Secretary Robert L. Green,

Executive Director F. Todd Taylor, and former Governor Lawrence J. Hogan. ECF No. 1.

Turner seeks monetary damages for an incident that occurred on July 9, 2019, when Officer

Porter deployed pepper spray into Turner's cell. *Id.*

In response to the Complaint, Defendants filed a Motion to Dismiss or, in the alternative,

for Summary Judgment. ECF No. 15. Turner was advised of his right to file an opposition

---

[1]    Acting Warden Roderick was not included on the docket as a Defendant. The Clerk will be directed
to correct the oversight. Roderick was not served; however, as set forth below, the Complaint fails to state
a claim against him and shall be dismissed as to Roderick under 28 U.S.C. §§ 1915(e), 1915A.

response to Defendants' motion and of the consequences for failing to do so. ECF No. 16.

While Turner has not filed an opposition response, his Complaint is verified which this Court

will construe as an affidavit for purposes of determining whether it generates a genuine dispute

of material fact for the claims asserted. *See Davis v. Zahradnick*, 600 F.2d 458, 459-60 (4th Cir.

1979). The Court has reviewed the pleadings and finds a hearing unnecessary. *See* Loc. R.

105.6 (D. Md. 2021). For the reasons stated below, Defendants' motion shall be **GRANTED**.

## I.   BACKGROUND

Turner claims that on July 9, 2019, Officer Porter deployed pepper spray through the

door of his cell without warning and without cause. ECF No. 1 at 10. He further alleges that

Porter falsely claimed Turner had refused a direct order to come to the door to be handcuffed.

*Id*. at 11. According to Turner, he was found not guilty of the Notice of Inmate Rule Violation

charging him with disobeying a direct order because the hearing officer found that Porter lied

about giving Turner a direct order. *Id*. at 11-12. Turner adds that Porter deployed the pepper

spray even though he knows that Turner has "a device in [his] chest to keep [his] heart beating"

and suffers from high blood pressure, making pepper spray particularly harmful to him. *Id* at 14.

Defendant Porter prepared a report in the aftermath of the incident with Turner. ECF No.

15-3 at 3. Porter states that while he was conducting routine security rounds on C-wing in

Housing Unit #1, he observed "Turner using the handle end of a disposable white plastic spoon

to reopen a previous injury to his left forearm area" caused by self-mutilation. *Id*. Porter

ordered Turner to drop the spoon and come to the security slot but "Turner continued to use the

spoon to dig into his injured flesh causing excessive bleeding." *Id*. Porter gave Turner the same

order again but, according to Porter, he "was met with defiance as Inmate turner pushed the

spoon handle deeper inside of his arm." *Id*. After Turner refused to comply with the orders

given, Porter deployed pepper spray into the cell and again ordered Turner to come to the

security slot. *Id.* Turner complied with the order, was handcuffed, and escorted from his cell.

*Id.* Porter explains that Officer Joseph Most and Sgt. Justin Thompson strip-searched Turner

after he arrived at the Housing Unit #1 Strip Cage. *Id.*, *see also id.* at **8-9**. Upon confirming that

Turner did not have any contraband, he was taken to the Medical Room where Kimberlie

Ventura, RN treated Turner for pepper spray exposure. *Id.* Officer Most escorted Turner to the

shower to decontaminate from the pepper spray exposure and was later placed in a holding cell

with an Inmate Observation Aide at the direction of Lauren Beitzel of the psychology

department. *Id.*

At a disciplinary hearing held on July 11, 2019, Turner was found not guilty of

disobeying a direct order. ECF No. 1-1 at 2-3. The Hearing Officer reviewed the video

surveillance footage and observed: "you can clearly see the officer approach the cell, then the

officer stands on his tip toes comes down, opens the slot and sprays pepper spray into the cell."

*Id.* at 3. The Hearing Officer concluded that there was not "enough time to give an order before

spraying" and "[a]lso the cell window was covered so how would the officer have seen into the

cell during a routine security round." *Id.*

Porter offers the following explanation for the surveillance video:

> Regarding the Hearing Officer's interpretation of the video of me on my
> tiptoes looking through a small hole in the window covering, I observed
> Inmate Robert Turner conducting self-harm with the backside of a white
> plastic spoon. Acting with haste, I gave him a verbal command to stop self-
> harming himself. When he did not stop, I discharged pepper spray through the
> slot in an attempt to prevent him from further injuring himself. Following
> through with my training and the Department of Public Safety and Correctional
> Services' mission statement to protect the public, its employees, and detainees
> and offenders under its supervision; I believe that I was doing what was
> necessary to save Inmate Turner's life.

ECF No. 15-7 at 2, ¶ 7.  Graphic photographs taken of the injury to Turner's arm support Porter's assertion that the situation called for emergency intervention.  ECF No. 15-3 at 14-20.

Turner asserts that Porter's actions amounted to a violation of the Eighth Amendment's prohibition against cruel and unusual punishment.  ECF No. 1 at 18-19.  He maintains that Porter was angry because he could not see into Turner's cell and deployed the pepper spray maliciously.  *Id.*  Turner further asserts that he is an "otherwise qualified individual with a disability" for purposes of the ADA and the RA.  *Id.* at 19-20.  He asserts that he was excluded solely by reason of his disability "from the participation in reasonable safety" and was "denied the benefits of conservative force."  *Id.* at 20-21.  He further asserts that Defendants Roderick, Hill, Green, Taylor, and Hogan "created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom."  *Id.* at 24.  As relief, Turner seeks $250,000 in compensatory damages and $15,000 in punitive damages "from each defendant."  *Id.* at 25.

## II.    STANDARD OF REVIEW

In reviewing the complaint in light of a Motion to Dismiss pursuant to Fed. R. Civ. Proc. 12(b)(6) the court accepts all well-pleaded allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir. 1997).  Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief."  *Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*,

534 U.S. 506, 513 (2002) (stating that a complaint need only satisfy the "simplified pleading standard" of Rule 8(a)).

The Supreme Court of the United States explained a "plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Nonetheless, the complaint does not need "detailed factual allegations" to survive a motion to dismiss. *Id.* at 555. Instead, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563. To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Pursuant to Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). Importantly, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported

motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

While self-represented pleadings are liberally construed, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), this Court maintains an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting Fed. R. Civ. P. 56(e)). A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 249-50.

## III.   ANALYSIS

Defendants assert that Turner failed to properly exhaust administrative remedies; has not adequately alleged the personal participation of each Defendant; the amount of force used was not excessive; they are entitled to qualified immunity; and that Turner fails to state a claim under the ADA or the RA.  ECF No. 15.

Also pending is Defendants' Motion to Seal the surveillance video of the prison tier, lobby, and corridor, which they submitted as an exhibit.  ECF No. 16.  They contend that "security concerns" require that the video be sealed and state that the video "is a strictly confidential video camera location and angles in North Branch Correctional Institution which, for security purposes, by its written terms is a confidential document." *Id.* at 1, ¶ 1.

Local Rule 105.11 (D. Md. 2021), which governs the sealing of all documents filed in the record, states in relevant part: "[a]ny motion seeking the sealing of pleadings, motions, exhibits or other documents to be filed in the Court record shall include (a) proposed reasons supported by specific factual representations to justify the sealing and (b) an explanation why alternatives to sealing would not provide sufficient protection."  The common-law presumptive right of access can only be rebutted by showing that countervailing interests heavily outweigh the public interest in access.  *Doe v. Public Citizen*, 749 F.3d 246, 265-66 (4th Cir. 2014).  The public's right of access to dispositive motions and the exhibits filed within is protected to an even higher standard by the First Amendment.  *See Rushford v. New Yorker Magazine, Inc.,* 846 F.2d 249, 253 (4th Cir. 1988). This right also "extends to a judicial opinion ruling on a summary judgment motion."  *Public Citizen*, 749 F.3d at 267.  The First Amendment's right of access "may be restricted only if closure is 'necessitated by a compelling government interest' and the denial of access is 'narrowly tailored to serve that interest.'"  *Id.* at 266 (citation omitted).

The Motion to Seal does not provide factual representation to justify sealing, nor does it explain why alternatives to sealing would not provide sufficient protection.  A vague reference to "security concerns" without any explanation as to why there are security concerns is not enough to justify the sealing of an exhibit, nor does it outweigh the right of access to public documents. The motion shall be denied.

In addition, there is no indication on this record that Turner was permitted to view the video surveillance prior to Defendants submitting it as an exhibit in this case.  Nevertheless, this Court has viewed the video and finds that it is of no evidentiary value as the interaction between Turner and Porter cannot be seen on any of the video tracks submitted.  The video therefore has not played a role in this Court's analysis.

A.      **Exhaustion of Administrative Remedies**

Defendants raise the affirmative defense that Turner has failed to exhaust his

administrative remedies.  If Turner's claims have not been properly presented through the

administrative remedy procedure they must be dismissed pursuant to the Prisoner Litigation

Reform Act ("PLRA"), 42 U.S.C. § 1997e.  The PLRA provides in pertinent part that:

> No action shall be brought with respect to prison conditions under section 1983
> of this title, or any other Federal law, by a prisoner confined in any jail, prison,
> or other correctional facility until such administrative remedies as are available
> are exhausted.

42 U.S.C. § 1997e(a).

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or

detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent

for, violations of criminal law or the terms and conditions of parole, probation, pretrial release,

or diversionary program."  42 U.S.C. § 1997e(h).  The phrase "prison conditions" encompasses

"all inmate suits about prison life, whether they involve general circumstances or particular

episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534

U.S. 516, 532 (2002); *see Chase v. Peay*, 286 F.Supp.2d 523, 528 (D. Md. 2003), *aff'd*, 98 Fed.

Appx. 253 (4th Cir. 2004).

Notably, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement

and does not impose a heightened pleading requirement on the prisoner.  Rather, the failure to

exhaust administrative remedies is an affirmative defense to be pleaded and proven by

defendants. *See Jones v. Bock*, 549 U.S. 199, 215-216 (2007); *Custis v. Davis*, 851 F.3d 358,

361 (4th Cir. 2017).  Nevertheless, a claim that has not been exhausted may not be considered by

this Court. *See Bock*, 549 U.S. at 220. In other words, exhaustion is mandatory. *Ross v. Blake*,

578 U.S. 632, 639 (2016).  Therefore, a court ordinarily may not excuse a failure to exhaust.

*Ross*, 578 U.S. at 639 (citing *Miller v. French*, 530 U.S. 327, 337 (2000) (explaining "[t]he

mandatory 'shall'. . . normally creates an obligation impervious to judicial discretion")).

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his

administrative remedies. *Moore v. Bennette*, 517 F.3d at 725, 729; *see Langford v. Couch*, 50

F.Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he . . . PLRA amendment made clear that exhaustion

is now mandatory."). Exhaustion requires completion of "the administrative review process in

accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548

U.S. 81, 88, 93 (2006). This requirement is one of "proper exhaustion of administrative

remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that

the agency addresses the issues on the merits).'" *Woodford* 548 U.S. at 93 (quoting *Pozo v.*

*McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original). But the court is

"obligated to ensure that any defects in [administrative] exhaustion were not procured from the

action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th

Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

In Maryland prisons, the Administrative Remedy Procedure is the administrative process

that must be exhausted. Md. Code Regs. § 12.02.28.02(B)(1), (D) (2018). First, a prisoner must

file an ARP with the warden within 30 days of the incident at issue. Md. Code Regs.

§ 2.02.28.05(D)(1) (requiring filing with the "managing official"); Md. Code Regs.

§ 12.02.28.02(B)(14) (defining "managing official" as "the warden or other individual

responsible for management of the correctional facility"); Md. Code Regs. § 12.02.28.09(B)

(setting the 30-day deadline). Second, if the ARP is denied, or the inmate does not receive a

timely response, a prisoner must file an appeal with the Commissioner of Correction within 30

days. Md. Code Regs. § 12.02.28.14(B)(5). If the appeal is denied, the prisoner must appeal

within 30 days to the Inmate Grievance Office ("IGO"). *See* Md. Code. Ann., Corr. Servs.

§§ 10-206, 10-210; Md. Code Regs. § 12.07.01.05(B). Inmates may seek judicial review of the

IGO's final determinations in a Maryland Circuit Court. *See* Md. Code Ann., Corr. Servs. § 10-

210(a).

An inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a). In *Ross v.*

*Blake*, 578 U.S. 632 (2016), the Supreme Court rejected a "freewheeling approach to exhaustion

as inconsistent with the PLRA." *Id.* at 635. In particular, it rejected a "special circumstances"

exception to the exhaustion requirement. *Id.* But, it reiterated that "[a] prisoner need not exhaust

remedies if they are not 'available.'" *Id.* at 636. "[A]n administrative remedy is not considered

to have been available if a prisoner, through no fault of his own, was prevented from availing

himself of it." *Moore v. Bennette,* 517 F.3d 717, 725 (4th Cir. 2008).

The Supreme Court stated in *Ross* that an administrative remedy is available if it is

"'capable of use' to obtain 'some relief for the action complained of.'" 578 U.S. at 642 (quoting

*Booth*, 532 U.S. at 738). Thus, an inmate must complete the prison's internal appeals process, if

possible, before bringing suit. *See Chase*, 286 F. Supp. 2d at 529-30. As a prisoner, Turner is

subject to the strict requirements of the exhaustion provisions. *See Porter v. Nussle*, 534 U.S. at

528 (no distinction is made with respect to exhaustion requirement between suits alleging

unconstitutional conditions and suits alleging unconstitutional conduct). Exhaustion is also

required even though the relief sought is not attainable through resort to the administrative

remedy procedure. *See Booth*, 532 U.S. at 741.

The *Ross* Court outlined three circumstances when an administrative remedy is

unavailable and an inmate's duty to exhaust available remedies "does not come into play." 578

U.S. at 643. First, "an administrative procedure is unavailable when (despite what regulations or

10

guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* at 643-44. The third circumstance arises when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644.

Defendants concede that Turner filed an ARP with the Warden regarding his claim against Porter. ECF No. 15-2 at 11. However, they contend that, despite Turner's assertion that he appealed the denial by the Warden, there is no record that Turner did so. Specifically, Defendants state that a search of the records at the Department of Public Safety and Correctional Services ("DPSCS") for any appeals of the ARP Turner filed (NBCI-1464-19) to the Commissioner did not return any records. ECF No. 15-4 at 2, ¶ 5. Thus, to the extent that Turner made no attempt to appeal the Warden's dismissal of his ARP, he failed to *properly* exhaust administrative remedies.

As noted, Turner's Complaint is verified and serves as an opposing affidavit for the purpose of a summary judgment motion. His contention that he attempted to appeal the ARP to the Commissioner and to the IGO but through no fault of his own, received no response is a genuine dispute of material fact regarding exhaustion. Accordingly, this Court will reach the merits of his claims.

### B.  Personal Participation

Turner names Defendants Warden Roderick, Commissioner Hill, Secretary Green, Executive Director Taylor, and former Governor Hogan. ECF No. 1 at 2-5. The sole allegation

against these Defendants is that they "created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom." *Id*. at 24. Liability under § 1983 attaches only upon personal participation by a defendant in the constitutional violation. It is well established that the doctrine of respondeat superior does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983); *see also Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (no respondeat superior liability in a Bivens suit). Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)).

Supervisory liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). Here, Turner does not attribute any actions, identify any policies, or include any facts indicating knowledge on behalf of these Defendants regarding the events giving rise to this lawsuit. It is clear they are named as Defendants based solely on their positions and job titles. The claim against Warden Roderick, Commissioner Hill, Secretary Green, Executive Director Taylor, and former Governor

Hogan is therefore dismissed for failure to state a claim. *See* 28 U.S.C. §§ 1915(e), 1915A (requiring dismissal of any complaint that is "frivolous, malicious or fails to state a claim upon which relief may be granted . . . .").

### C.   Excessive Force

Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U. S. 1, 6-7 (1992). This Court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *Whitley v. Albers*, 475 U.S. 312, 321 (1986). The absence of significant injury alone is not dispositive of a claim of excessive force. *Wilkins v. Gaddy*, 559 U.S. 34 (2010). The extent of injury incurred is one factor indicative of whether the force used was necessary in a particular situation, but if force is applied maliciously and sadistically, liability is not avoided simply because the prisoner had the good fortune to escape serious harm. *Id*. at 38.

Deployment of pepper spray by correctional officers "is generally recognized [as] a violation of the Eighth Amendment" where "prison officials . . . use mace, tear gas or other chemical agents in quantities greater than necessary or for the sole purpose of infliction of pain." *Iko v. Shreve*, 535 F.3d 225, 240 (4th Cir. 2008) (quoting *Williams v. Benjamin*, 77 F.3d 756, 763 (4th Cir. 1996) (emphasis omitted)). Eighth Amendment violations occur where correctional officers have used more than a reasonable amount of chemical agent. *See, e.g.*, *Furnace v. Sullivan*, 705 F.3d 1021, 1025 (9th Cir. 2013) (finding Eighth Amendment violation where officer discharged can of pepper spray until empty, and other officer also joined in); *Lawrence v.*

*Bowersox*, 297 F.3d 727, 732 (8th Cir. 2002) (same, where prisoner's entire cell was doused in pepper spray using fire-extinguisher-like device); *DeSpain v. Uphoff*, 264 F.3d 965, 978 (10th Cir. 2001) (same, where officer indiscriminately sprayed entire prison tier).  However, where an inmate repeatedly ignores official commands, multiple applications of pepper spray have been found reasonable.  *See Williams*, 77 F.3d at 763 (finding no Eighth Amendment violation where officer administered pepper spray after prisoner asked "Why?" in response to command); *Jackson v. Morgan*, 19 Fed. Appx. 97, 102 (4th Cir. 2001) (upholding use of pepper spray twelve times when inmate refused to comply with commands to move from his cell); *Norris v. Detrick*, 918 F.Supp. 977, 984 (N.D.W.Va. 1996) (upholding use of two blasts of pepper spray when inmate refused to return to his cell during lockdown).

Assuming as true Turner's allegation that Porter's use of pepper spray was not preceded by a direct order that he ignored, there was an adequate basis for Porter's actions.  It is indisputable that Turner was engaging in a serious act of self-harm that, if ignored, may have endangered his life.  *See* ECF No. 15-3 at 16-17 (photographs).  Further, Porter did not deploy more pepper spray than what was needed to gain Turner's compliance.  The Eighth Amendment claim therefore fails and Porter is entitled to summary judgment on this claim.

**D.     ADA and RA**

Title II of the ADA prohibits public entities, including "any State or local government" and "any department, agency, special purpose district, or other instrumentality of a State or States or local government," 42 U.S.C. § 12131(1), from discriminating "by reason of" disability against a "qualified individual with a disability." *Id.* § 12132.  The Rehabilitation Act was enacted seventeen years prior to the ADA.  Title II of the ADA is closely related to § 504 of the Rehabilitation Act, and to "the extent possible, [courts] construe similar provisions in the two

statutes consistently." *Freilich v. Upper Chesapeake Health, Inc.*, 313 F.3d 205, 214 (4th Cir.

2002); *accord Class v. Towson Univ.*, 806 F.3d 236, 244 n.2 (4th Cir. 2015) (in an action under

both acts, discussing the issues only under the ADA, as the standards applied are the same);

*Seremeth v. Bd. of Comm'rs Frederick Co., et al.*, 673 F.3d 333, 336 n.1 (4th Cir. 2012)

("Claims under the ADA's Title II and the Rehabilitation Act can be combined for analytical

purposes because the analysis is 'substantially the same.'") (quoting *Doe v. Univ. of Md. Med.*

*Sys. Corp.*, 50 F.3d 1261, 1265 n.9 (4th Cir. 1995); *Rogers v. Dep't of Health & Envtl. Control*,

174 F.3d 431, 433-34 (4th Cir. 1999) (stating that courts may apply Rehabilitation Act precedent

in interpreting the ADA, and vice versa).  Indeed, the statutes "share the same definitions of

disability," *Paulone v. Frederick*, 787 F. Supp. 2d 360, 369 (D. Md. 2011), and Title II of the

ADA explicitly provides that "[t]he remedies, procedures, and rights" provided under § 504 of

the Rehabilitation Act "shall be the remedies, procedures, and rights [that Title II of the ADA]

provides to any person alleging discrimination on the basis of disability . . ." 42 U.S.C. § 12133.

To prevail under an ADA Title II or a Rehabilitation Act § 504 claim, "a plaintiff must

show that [he or] she was excluded from participation in, or denied the benefits of, a program or

service offered by a public entity, or subjected to discrimination by that entity." *Constantine v.*

*George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005) (emphasis omitted); *see also Nat'l*

*Fed'n of the Blind v. Lamone*, 813 F.3d 494, 502-03 (4th Cir. 2016).  To that end, the Fourth

Circuit has recognized "three distinct grounds for relief: (1) intentional discrimination or

disparate treatment; (2) disparate impact; and (3) failure to make reasonable accommodations."

*Lamone*, 813 F.3d at 503 n.5 (citing *A Helping Hand, LLC v. Baltimore*, 515 F.3d 356, 362 (4th

Cir. 2008)).  Under Title II, a plaintiff need only prove discrimination "by reason of" disability,

42 U.S.C. § 12132; but, a successful Rehabilitation Act claim requires a showing of

15

discrimination "*solely* by reason of" disability, 29 U.S.C. § 794(a) (emphasis added).  *See*

*Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 461-62 (4th Cir. 2012) ("To succeed

on a claim under the Rehabilitation Act, the plaintiff must establish he was excluded 'solely by

reason of' his disability; the ADA requires only that the disability was 'a motivating cause' of

the exclusion.") (quoting *Baird ex rel. Baird v. Rose*, 192 F.3d 462, 468-69 (4th Cir. 1999).

Turner's complaint contains no factual allegations to support his conclusion that he was

the subject of discrimination when he was "excluded from the participation in reasonable safety

and . . . denied the benefits of conservative force."  ECF No. 1 at 20-21.  Nothing in this record

suggests that Turner's alleged disability played any role in the decision to interrupt his self-

mutilation and prevent him from further self-inflicted harm.  Indeed, Turner provides no

description of behavior by any of the Defendants that indicates they were motivated by

discriminatory animus in connection with his disability, or that other inmates in similar situations

were treated differently.  With regard to Turner's ADA and RA claims, the Complaint does not

"contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on

its face.'"  *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  These two claims are

dismissed.

## IV.    CONCLUSION

By separate Order which follows, Defendants' Motion to Dismiss or, in the alternative,

for Summary Judgment shall be **GRANTED** and the Motion to Seal shall be **DENIED**.

May 15, 2023
Date

LYDIA KAY GRIGGSBY
United States District Judge